Eric J. Sinrod  (SBN 122868)
Michael J. Dickman (SBN 227096)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:     ejsinrod@duanemorris.com
                mjdickman@duanemorris.com

Keith Zakarin (SBN 126528)
**DUANE MORRIS LLP**
101 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619.744.2200
Facsimile: 619.744.2201
E-Mail:     kzakarin@duanemorris.com

Attorneys for Defendant
Ex'pression Center For New Media

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | Case No.: C08-01768-MHP |
| SAMUEL DIGIACOMO, | **REPLY IN SUPPORT OF EX'PRESSION CENTER FOR NEW MEDIA'S MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR ALTERNATIVELY STAY, CASE** |
| Plaintiff, | |
| v. | |
| EX'PRESSION CENTER FOR NEW MEDIA, INC., d/b/a EX'PRESSION COLLEGE FOR DIGITAL ARTS, et al., | [Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*); California Arbitration Act (Cal Code Civ. Proc. §§ 1281, *et seq.*); F.R.C.P. 12(b)(1), (6)] |
| Defendants. | Date:        September 8, 2008<br>Time:        2:00 P.M.<br>Judge:      Hon. Marilyn H. Patel<br>Dept.:       15, 18th Floor<br>Location:   450 Golden Gate Ave.<br>                 San Francisco, CA 94102 |
| | Complaint Filed:     April 2, 2008 |

DM1\1386609.1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..................................................................................................1

II.  DISCUSSION ......................................................................................................2

   A.   All of Plaintiff's Claims Are Arbitrable as a Matter of Law. ........................... 2

   B.   The Arbitration Agreement Is Not Unconscionable And Must Be
        Enforced. .................................................................................................. 6

        1.   Plaintiff Has Not Established Procedural Unconscionability. .............. 6

        2.   Plaintiff Has Not Established Substantive Unconscionability. ............ 8

   C.   This Court, And Not A Jury, Must Issue An Arbitration Order ................... 11

   D.   Dismissal Is Appropriate And Within This Court's Discretion. .................... 12

III. CONCLUSION ...................................................................................................13

1
2
3

## <u>TABLE OF AUTHORITIES</u>

4

**Page(s)**

**Cases**

5

6
*24 Hour Fitness v. Superior Court* (1998)
    66 Cal.App.4th 1199 ...................................................................................................8

7
*A & M Produce Co. v. FMC Corp.* (1982)
8
    135 Cal.App.3d 473 ....................................................................................................6

9
*AIU Insurance Co. v. Superior Court* (1990)
    51 Cal.3d 807 .........................................................................................................2-3

10
11
*Armendariz v. Foundation Health Psychcare Service* (2000)
    24 Cal.4th 83 ...........................................................................................................10

12
*Boghos v. Certain Underwriters at Lloyd's of London* (2005)
13
    36 Cal.4th 495 .........................................................................................................10

14
*Bolanos v. Khalatian* (Cal. Ct. App. 1991)
    231 Cal. App. 3d 1586 .............................................................................................11

15
16
*Brookwood v. Bank of America* (1996)
    45 Cal.App.4th 1667 ..................................................................................................8

17
*Broughton v. Cigna Healthplans* (1999)
18
    21 Cal.4th 1066 ..........................................................................................................6

19
*Bushley v. Credit Suisse First Boston* (9th Cir. 2004)
    360 F.3d 1149 ...........................................................................................................12

20
*Casa Herrera, Inc. v. Nasser Beydoun* (2004)
21
    32 Cal.4th 336 .........................................................................................................4-5

22
*Circuit City Stores v. Ahmed* (9th Cir. 2002)
    283 F.3d 1198 .............................................................................................................8

23
24
*Condee v. Longwood Management Corp.* (2001)
    88 Cal.App.4th 215 .....................................................................................................2

25
*Cruz v. PacifiCare Health Systems, Inc.* (2003)
26
    30 Cal.4th 303 .............................................................................................................6

27
*Davis v. Farmers Ins. Group* (2005)
    134 Cal.App.4th 100 ...................................................................................................4
28

EX'PRESSION'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

*EFund Capital Partners v. Pless* (2007)
   150 Cal.App.4th 1311 ...........................................................................................4

*Graham v. Scissor-Tail, Inc.* (1981)
   28 Cal.3d 807 ........................................................................................................6

*Green Tree Fin. Corp. v. Randolph* (2000)
   531 U.S. 79 ............................................................................................................9

*Lagatree v. Luce, Forward, Hamilton & Scripps* (2001)
   74 Cal.App.4th 1105 ....................................................................................... 9-11

*Little v. Auto Stiegler, Inc.* (2003)
   29 Cal.4th 1064 .....................................................................................................9

*Lucas v. Gund, Inc.* (C.D. Cal. 2006)
   450 F.Supp.2d 1125 .............................................................................................11

*Madden v. Kaiser Found. Hosps.* (1976)
   17 Cal.3d 699 ...................................................................................................8, 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985)
   473 U.S. 614 ..........................................................................................................4

*Nagrampa v. Mailcoups, Inc.* (9th Cir. 2006)
   469 F.3d 1257 ......................................................................................................10

*Randas v. YMCA of Metropolitan Los Angeles* (1993)
   17 Cal.App.4th 158 ...............................................................................................8

*Reilly v. WM Fin. Servs.* (9th Cir. 2004)
   95 Fed. Appx. 851................................................................................................11

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.* (9th Cir. 2004)
   368 F.3d 1053 ......................................................................................................12

*Thompson v. Toll Dublin, LLC* (July 23, 2008)
   2008 Cal.App. LEXIS 1234...................................................................................10

*Trident Center v. Connecticut General Life Ins.* (9th Cir. 1988)
   847 F.2d 564 ..........................................................................................................3

*United States Life Ins. Co. v. Ins. Comm'r* (9th Cir. 2005)
   160 Fed. Appx. 559................................................................................................9

**Statutes**

9 U.S.C. § 4 ................................................................................................................11

9 U.S.C. § 16(b)(2) .....................................................................................................12

Cal. Civ. Code § 895 ...................................................................................................10

Cal. Civ. Code § 1641 ..................................................................................................3

Cal. Civ. Proc. § 1856 ..................................................................................................4

Cal. Evid. Code § 622 ..................................................................................................4

Educ. Code § 94810(a)(1) .............................................................................................5

Federal Arbitration Act, 9 U.S.C. §§ *et seq.* ...............................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................................................12

Defendant Ex'pression Center for New Media d/b/a Ex'pression College for Digital Arts ("Ex'pression") hereby submits the following Reply in Support of its Motion to Compel Arbitration and to Dismiss, or Alternatively Stay, the Case (the "motion").

## I.     INTRODUCTION

In his Opposition[1] to Ex'pression's motion, Plaintiff Samuel DiGiacomo ("Plaintiff") admits:

> There is no dispute that both parties signed the Enrollment Agreement, that the Enrollment Agreement contains an arbitration provision, and that the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* applies to it. (Opposition, at 5:24-26.)

Despite this concession, Plaintiff urges this Court to find the arbitration agreement only applies to enrollment in, and not expulsion from, Ex'pression, or alternatively that the arbitration agreement is somehow "unconscionable." These assertions are legally without merit, and are supported solely by irrelevant and inadmissible evidence submitted by Plaintiff. The Court should reject Plaintiff's arguments, and compel arbitration of this matter consistent with the parties' intentions and agreement.

The arbitration agreement here is a simple one, disclosed in plain and ordinary language and prominently displayed in a short two-page Enrollment Agreement:

> **6. ARBITRATION AGREEMENT**
>
> **6.1** Any dispute arising from enrollment at Ex'pression College for Digital Arts, **no matter how described, pleaded or styled**, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") at Emeryville, California, under its Commercial Rules. All determinations as to the scope, enforceability of this Arbitration Agreement shall be determined by the Arbitrator, and not by a court. The award rendered by the arbitrator may be entered in any court having jurisdiction.
>
> **Student Initials:** _____ I have read and understand the Arbitration Agreement.

(Declaration of Melissa Thompson in Support of Motion to Compel Arbitration, filed July 24, 2008, Exhibit A, p. 2 ["Enrollment Agreement"], emphasis in original, other than phrase "no matter how described, pleaded or styled".) It was initialed by Plaintiff, and then again acknowledged by

---

[1] "Opposition" shall mean and refer to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss, or Alternatively, Stay Case, filed August 18, 2008.

Plaintiff in signing the Enrollment Agreement:

> **My signature below certifies that I have read, understood, and agreed to my rights and responsibilities, and that the institution's cancellation and refund policies <u>and arbitration clause</u> have been clearly explained to me.  I have received a copy of this agreement.**

(Enrollment Agreement, p. 2, bold in original, underlining added.)  Plaintiff admitted that he signed the Enrollment Agreement and in fact initialed it in seven places throughout.  The Enrollment Agreement applies equally to both parties without qualification.  In sum, it is enforceable, and should be enforced.

## II.    DISCUSSION

The party opposing arbitration bears the substantial burden of providing evidence supporting a defense to enforcement.  *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219.  Plaintiff has failed to meet his burden here, particularly in light of his admission that he is an "adult;" his mother's affirmation that he is "intelligent;" and that his mother played a significant role in the two hour long admissions process, during which she had every opportunity to (and did) ask questions.  Further, the Enrollment Agreement provided Plaintiff with an opportunity to withdraw (and remove himself from the contract) prior to the first day of instruction.  (Enrollment Agreement, ¶ 7.1.)  Plaintiff chose not to do that.  Plaintiff concedes the Federal Arbitration Act applies to the arbitration agreement at issue.  (Opposition, at 5:24-26.)  Thus only two issues are presented in opposition: (1) Plaintiff's claims are somehow not arbitrable; and (2) the arbitration agreement is unconscionable.  Neither argument holds water.

### A.    All of Plaintiff's Claims Are Arbitrable as a Matter of Law.

Plaintiff asserts that his claims are not arbitrable, claiming that the arbitration agreement only applies to "any disputes arising out of your *enrollment* at Ex'pression College for Digital Arts [emphasis added]," whereas his claims allegedly arise out of his *expulsion* from Ex'pression.  The Court should reject Plaintiff's linguistic gymnastics.

Interpretation of a contract is a step-by-step analysis.  California law looks to the mutual intent of the parties, and "[s]uch intent is to be inferred, if possible, solely from the written provisions of the contract."  *AIU Insurance Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-22.

Further, "[t]he 'clear and explicit' meaning of these provisions interpreted in their 'ordinary and popular sense' ... controls judicial interpretation."  *Id.*  Additionally, terms in a contract must be construed in connection with the contract as a whole, and not in isolation, with each term assisting to interpret other terms.  Cal. Civ. Code § 1641; *Trident Center v. Connecticut General Life Ins.* (9th Cir. 1988) 847 F.2d 564, 566-67.  Under California law, Plaintiff's "interpretation" of the arbitration agreement is unfounded.

The context of the use of "enrollment" in the arbitration agreement is clear on the face of the Enrollment Agreement.  The term is not used in isolation, but rather includes Plaintiff's "enrollment at Ex'pression," demonstrating that "enrollment" was intended to cover the entire period Plaintiff attended Ex'pression.  This construction is consistent with other terms in the Enrollment Agreement, which use the term "enrollment":

> • Students will be responsible for fulfilling graduation requirements in effect when a student has enrolled, reenrolled after withdrawing, or been reinstated after a dismissal.  Additional tuition may be required for coursework that is required because of such an *enrollment* change.  [Enrollment Agreement, p. 1, Section 4.3, emphasis added.]

> • The student's dissatisfaction with or non-receipt of educational services offered by [Ex'pression] does not excuse the student from repayment of any private loan ... or other loan whatsoever made to the student for *enrollment* and completion of training at [Ex'pression].  [Enrollment Agreement, p. 1, Section 4.5, emphasis added.]

> • Students who have not visited the school prior to *enrollment* will have the opportunity to withdraw without penalty within five business days ....  [Enrollment Agreement, p. 1, Section 5.2, emphasis added.]

> • 7.2 Withdrawal or Termination Prior to Completion of *Enrollment* Period.  [Enrollment Agreement, p. 2, Section 7.2, emphasis added.]

> • Tuition for academic year _____ for the program of *enrollment* is $_____.  [Enrollment Agreement, p. 2, Section 9.1, emphasis added.]

> • In order to complete the program of *enrollment*, it is necessary that the student pay tuition for every remaining academic year required to complete the program.  [Enrollment Agreement, p. 2, Section 9.1, emphasis added.]

The term "arising out of" and "arising from" have been consistently given a broad

interpretation by California courts. *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1327-28 (holding that "arising out of" broadly construed in arbitration agreement); *Davis v. Farmers Ins. Group* (2005) 134 Cal.App.4th 100, 107 (holding that "'[a]rising out of' [as used in insurance contract] are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with'[.]") The broad application and meaning of the arbitration agreement is further supported by the fact that it applies to "any dispute . . . **no matter how described, pleaded or styled**[.] [emphasis added]." The Supreme Court has indicated that to require arbitration, the allegations in a complaint need only "touch matters" covered by the arbitration clause. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*. (1985) 473 U.S. 614, 625 n.13. Thus, reading the Enrollment Agreement in its entirety, in the context of the words used and the overall contract, demonstrates what it says on its face: "Any dispute arising from enrollment at Ex'pression College for Digital Arts, no matter how described, pleaded or styled, shall be resolved by binding arbitration . . . ." Plaintiff's after-the-fact limited and contrived interpretation is unreasonable and must be rejected.[2]

Plaintiff also makes much of the allegation that he supposedly never received Ex'pression's complaint and grievance procedures despite initialing page one of the Enrollment Agreement stating that he had "been given a copy of the complaint and grievance procedure." The parol evidence rule "establishes that the terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements" and therefore "necessarily bars consideration of extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the written agreement." *Casa Herrera, Inc. v. Nasser Beydoun* (2004) 32 Cal.4th 336, 344; Cal. Civ. Proc. § 1856; *see also* Cal. Evid. Code § 622 ("[F]acts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration.") Although the parol evidence rule results in the

---

[2] In an analogous context, Plaintiff's argument would mean that an arbitration agreement relating to all disputes "arising from" employment would somehow exclude claims arising from termination of such employment. This is nonsensical. Enrollment logically encompasses expulsion arising from acts occurring during such enrollment, just as termination encompasses acts by an employee committed while employed.

1  exclusion of evidence, it is a rule of substantive law rendering all evidence that that alters or varies

2  the terms of the integrated writing *legally irrelevant*. *Casa Herrera, supra*, 32 Cal.4th at 343. Thus,

3  as a matter of law, Plaintiff cannot be heard to assert he did not receive the complaint and grievance

4  procedure.

5      Plaintiff also cannot claim that he was "confused" by the avenues offered in the Enrollment

6  Agreement by which a student at Ex'pression could have proceeded with a formal or informal

7  complaint. First, as statutorily required, the Enrollment Agreement provides notice to Plaintiff that

8  "any questions or problems" regarding Ex'pression can be directed to the Bureau for Private

9  Postsecondary and Vocation Education ("BPPVE"), the California regulatory body that oversees

10  private colleges such as Ex'pression. *See* Cal. Educ. Code § 94810(a)(1) and Declaration of Melissa

11  Thompson in Support of Reply Brief ("Thomson Reply Decl."), ¶ 3. Students are permitted to

12  complain to the BBPVE to potentially institute administrative proceedings against the school.[3]

13      Second, the school has its own separate, grievance and complaint procedure, as noted directly

14  beneath the BPPVE reference in the Enrollment Agreement. The latter complaint process is

15  specifically outlined in the school catalogue, at pages 26-27, which Plaintiff admits he received at

16  the time of his enrollment. Sam DiGiacomo Decl., Exh. B, ¶ 1.2; Thompson Reply Decl., at Exh. A

17  (catalogue excerpts). The grievance procedure, as Plaintiff presumptively knows, has to do with the

18  filing of a grievance against a student and is therefore doubly irrelevant to the arbitration agreement.

19  Thomson Reply Brief, Exh. A, page 26.[4]

20      Given all the above, there was nothing confusing or inconsistent between: (1) the contractual

21  term that mandated an arbitration of any civil dispute by Plaintiff against the school and (2) the

22  statutorily mandated contractual provision referencing questions to the BPPVE, or (3) the

23  contractual provision reflecting the school's own complaint procedure as against *students*. These

---

24  [3] If Plaintiff had bothered to check, based on notice from the Enrollment Agreement, and as Plaintiffs' counsel

25  undoubtedly knows, the BPPVE complaint procedure makes clear that: "[th]e filing of this complaint does not prohibit
   you from filing a civil action." It goes on to state that "you do not have to provide the personal information requested[,]"

26  which demonstrates that the purpose of the BPPVE complaint is to institute administrative action from the regulatory
   body, not a private dispute between the specific student and Ex'pression. Request for Judicial Notice, Exh. A.

27  [4] Plaintiff cannot assert that he has been unaware of the grievance procedure; indeed, Plaintiff was expelled as a result of

28  such grievance procedure being invoked against him.

1   procedures are all mutually and clearly exclusive.  Significantly, it should be noted that, regardless,

2   "confusion" is not the applicable standard.  The standard is, as discussed below, whether the

3   arbitration agreement was unconscionable.  Even assuming Plaintiff's supposed confusion was

4   legitimate, it does not rise to the level of proof required to establish unconscionability.

5       Finally, any assertion that Plaintiff's statutory claims are not all subject to arbitration is

6   without merit as well.  The California Supreme Court has held that claims under the UCL must be

7   arbitrated when there is an agreement to do so.  *See Cruz v. PacifiCare Health Systems, Inc.* (2003)

8   30 Cal.4th 303, 311-312 (holding claims for damages, restitution, or other monetary relief are

9   arbitrable under California law, as well as federal law); *Broughton v. Cigna Healthplans* (1999) 21

10  Cal.4th 1066 (expressly declining to hold that an arbitrator could not grant individual injunctive

11  relief.)  In light of the holdings in *Cruz* and *Broughton,* Plaintiff's statutory claims are arbitrable as a

12  matter of law.

13      Because all of Plaintiff's claims are arbitrable as a matter of law, including Plaintiffs'

14  statutory claims, the arbitration agreement must be enforced.

15      **B.    The Arbitration Agreement Is Not Unconscionable And Must Be Enforced.**

16      Plaintiff further complains that the arbitration agreement is unconscionable under California

17  law.  (Opposition, at 8-11.)  Plaintiff concedes, however, that in order to avoid an arbitration

18  agreement, that agreement must be *both* procedurally and substantively unconscionable.  Plaintiff

19  has not met his burden of proving either here.

20      **1.    Plaintiff Has Not Established Procedural Unconscionability.**

21      Procedural unconscionability focuses on oppression due to the parties' supposed unequal

22  bargaining power.  *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486-487.

23  Plaintiff first alleges that the Enrollment Agreement is "oppressive" because it is a contract of

24  adhesion.  (Opposition, at 8:22-28.)  Even if it were, courts generally enforce adhesion contracts,

25  including arbitration agreements, according to their terms:  "[T]the fact that provision for arbitration

26  is contained in a contract of adhesion will not, of itself, render the provision unenforceable."

27  *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819-821.  As Witkin explains, an adhesion

28  contract "means only that the contract is a standardized agreement imposed on the subscribing party

1    without an opportunity to negotiate terms; *it is nonetheless valid and existing*."  1 Witkin, § 325, p.

2    353 (10th Ed.), emphasis added.  There is no oppression here.

3          Plaintiff next argues that he should not be required to arbitrate his claims because he was

4    "surprised" that the Enrollment Agreement contained an arbitration agreement, essentially because

5    he allegedly failed to *read* the document despite: having two hours to do so; initialing it in seven

6    places, and signing it below a paragraph, as follows, that stated such signature constituted an

7    understanding and review of the document:

8          **My signature below certifies that I have read, understood, and agreed to my**
          **rights and responsibilities, and that the institution's cancellation and refund**
9          **policies and arbitration clause have been clearly explained to me.  I have**
          **received a copy of this agreement.**   [emphasis in the original].
10

11   (Opposition, at 9:1-18 and Sam DiGiacomo Decl., Exh. B and ¶ 5).  Plaintiff admits he is an "adult"

12   (Sam DiGiacomo Decl., ¶ 1), and of the legal age to consent to the arbitration agreement.  Further,

13   his mother was present and asked questions during the entire <u>two hour</u> enrollment process.  (*See*

14   Declaration of Jacqueline DiGiacomo, ¶ 13.)  Plaintiff's assertion of "surprise" or adhesion is further

15   contradicted by the Enrollment Agreement itself, which provided Plaintiff with an opportunity to

16   cancel or withdraw (and remove himself from the contract) prior to the first day of instruction.

17   (Enrollment Agreement, ¶ 7.1.)  Indeed, pursuant to Section 7.1, Plaintiff could have received a

18   "refund [of] all charges" less the $95 non-refundable application fee if he cancelled the enrollment

19   agreement prior to the first day of instruction (Plaintiff signed the Enrollment Agreement on

20   September 18, 2006, and started his program of enrollment <u>nine days later</u> on September 27, 2006,

21   as reflected on Page 1 of the Agreement) or if he withdrew within <u>five </u>days of orientation.  Plaintiff

22   chose not to do that, by his own admission.  Obviously, the Enrollment Agreement containing the

23   arbitration language was not shoved down Plaintiff's throat with immediate consent required.

24   Plaintiff participated in a lengthy admissions process, he and his mother were able to ask questions,

25   and they had <u>days</u> to consider the Enrollment Agreement and decide whether or not to cancel or

26   withdraw.[5]

27   ───────────────────
     [5] It strains credulity for Plaintiff to argue that, despite all the above, he had insufficient resources or time to digest, or
28   understand, and therefore was "surprised" by, the Enrollment Agreement.  Indeed, his mother spent time asking all sorts
     of questions concerning the agreement and enrollment; rightfully so, given the duty on the part of each contracting party

1    The arbitration agreement is part of the contract; its presence in the Enrollment Agreement is

2    not unusual or outside the parties' reasonable expectations.  The arbitration agreement is not buried

3    or hidden; rather, the agreement is conspicuously denoted with the capitalized and bolded heading

4    "**ARBITRATION AGREEMENT**" at the top of the second page of a two page agreement.  Any

5    assertion of "surprise" is belied by the evidence.  In contrast, Plaintiff has no "evidence" to support

6    such assertion of "surprise," offering only a conclusory statement in the Opposition at 9:1-2 ("the

7    manner in which the arbitration provision at issue here was imposed on Samuel is permeated with

8    surprise").  Such assertion is unsupported by any evidence, including any declaration testimony.

9    Plaintiff's failure to establish that the arbitration agreement is procedurally unconscionable is

10   fatal to his argument.  *Circuit City Stores v. Ahmed* (9th Cir. 2002) 283 F.3d 1198, 1200 ("Because

11   [plaintiff] failed to satisfy even the procedural unconscionability prong, we need not reach his

12   arguments that the agreement is substantively unconscionable.")  For this reason alone, the

13   arbitration agreement must be enforced.

14                    **2.    Plaintiff Has Not Established Substantive Unconscionability.**

15   Even if Plaintiff could show procedural unconscionability, which he cannot, the arbitration

16   agreement must still be enforced because he cannot prove substantive unconscionability.

17   Substantive unconscionability refers to terms that are "so one sided as to 'shock the conscience' or

18   that impose harsh or oppressive terms."  *24 Hour Fitness v. Superior Court* (1998) 66 Cal.App.4th

19   1199, 1213.  These elements are not present here.  Plaintiff cannot reasonably argue that the terms of

20   the arbitration agreement are one-sided because the arbitration agreement applies and binds *both*

21   parties equally.  It does nothing else beside shift the forum from a court to an arbitral.  As such, the

22

23   to read and understand the contract being entered.  A party must exercise reasonable diligence to understand the terms
     and provision of a contract he or she signs.  *See Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674.  A
24   party who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the
     instrument.  *See Madden v. Kaiser Found. Hosps.* (1976) 17 Cal.3d 699, 710.  Thus, Plaintiff cannot use his own alleged
25   lack of diligence to avoid the arbitration agreement.  *See Brookwood, supra,* 45 Cal.App.4th at 1674.

26   Further, the law in California is that a party, even an illiterate one, is presumed to have read and understood a contract he
     or she signed. "Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to
27   all its terms, and cannot escape liability on the ground that he has not read it."  1 Witkin, Summary of Cal. Law (9th ed.
     1987) Contracts, § 120, p. 145; *see Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163
28   [quoting Witkin].

agreement is not substantively unconscionable. *Little v. Auto Stiegler, Inc*. (2003) 29 Cal.4th 1064, 1075. A mutual arbitration agreement, as a matter of law, is not one-sided, and can hardly "shock the conscience." For this reason alone, the arbitration agreement is not unconscionable and should be enforced.

Given that the arbitration agreement is perfectly mutual, Plaintiff is left to argue that the AAA's cost and fee structure renders the arbitration agreement substantively unconscionable. Plaintiff's assertion that the arbitration agreement is "overly harsh and one sided" because the AAA Commercial Rules allegedly require Plaintiff to "pay much larger filing fees than they would have to pay in court" rings hollow. Plaintiff provides no evidence that he cannot afford the arbitration costs or fees, and in fact, Plaintiff's father is gainfully employed at a law firm, which is currently handling the case *pro bono*, and would presumably handle any arbitration *pro bono*. Further, Plaintiff is demanding a trial by jury, which in and of itself involves substantial costs that the parties sought to avoid by agreeing to arbitration in the first place. A federal litigation can last for years, and the costs during the litigation and trial alone, particularly for court reporters, could exceed any arbitration fees. There is a strong public policy in favor of arbitration over litigation precisely because of factors such as cost and speed. *United States Life Ins. Co. v. Ins. Comm'r* (9th Cir. 2005) 160 Fed. Appx. 559, *9-*10 ("the California 'Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution,' and California 'courts will indulge every intendment 'to give effect to such proceedings.'" [citation omitted]).

It is true that the arbitration agreement is silent as to costs. However, an arbitration agreement that is silent on the issue of costs is not unconscionable. *See Green Tree Fin. Corp. v. Randolph,* (2000) 531 U.S. 79, 91-92. Moreover, requiring Plaintiff to bear even some of the fees would still not render the arbitration agreement unconscionable. The issue has already been conclusively resolved by *Lagatree v. Luce, Forward, Hamilton & Scripps* (2001) 74 Cal.App.4th 1105, where the court held that the AAA fee structure is not unconscionable. In *Lagatree*, the Court of Appeals examined whether the AAA fee structure was unconscionable in an employment context of a mandatory pre-dispute arbitration agreement. There, under the heightened scrutiny given those types of arbitration agreements, the Court of Appeals examined whether the AAA's fees rendered

the arbitration agreement unconscionable. The court held that it did not. In reaching this conclusion, the Court noted that AAA provided that a plaintiff could apply for a waiver of the AAA fees. Consequently, the court "perceive[d] no unfairness with regard to the AAA administrative fees." *Id*. at 1130.

Here, like *Lagatree*, Plaintiff has the same ability to apply for a <u>complete</u> waiver of fees. The very AAA Commercial Rules which Plaintiff attacks as unconscionable, states:

> The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features or choices.

(Declaration of Thomas H. Clarke, Jr., Exh. A, at p. 25-26.) The AAA Supplementary Procedures expressly include a process to seek a waiver. (*See* Request for Judicial Notice, ¶ 2, referencing AAA, Consumer Related Disputes Supplementary, Provision C-8.) In contrast to the above case law and AAA Rules, Plaintiff's case law is inapposite.[6]

---

[6] *Armendariz* is limited by its own terms to the employment context and its holdings are specifically tailored to the employer-employee relationship. The California Supreme Court has expressly declined to extend the decision in *Armendariz* beyond the employment context. *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 506-508. Employer-employee relationships are inherently one-sided because employers have more bargaining power, in comparison to an arms-length contract agreement between Plaintiff and Ex'pression. Besides being inapplicable in the commercial context, the facts in *Armendariz* are readily distinguishable. The mandatory provisions there contained multiple defects, including discovery limitations and numerous non-mutual obligations and impositions. The employer had the right of imposing arbitration on the employee, but the reverse was not true. *Armendariz v. Foundation Health Psychcare Service* (2000) 24 Cal.4th 83 at 116-117. Unlike the agreement in *Armendariz*, here, the arbitration agreement mutually binds both Ex'pression and Plaintiff. Armendariz is not controlling or persuasive.

*Thompson v. Toll Dublin, LLC,* (July 23, 2008) 2008 Cal.App. LEXIS 1234, is even less applicable. That case involved the purchase of real estate, an inherently complicated matter, and involved contracts and other papers of upwards of 800 pages. Allegedly buried within those 800 pages were arbitration provisions which the Court interpreted as applying only to alleged construction defect claims under Title 7 of the California Civil Code (Cal. Civ. Code section 895, et seq.) That is a far cry from the 2 page, plain English, and readily understood Enrollment Agreement. *Toll Dublin* has no bearing on this case.

Similarly, Plaintiff's reliance on *Nagrampa v. Mailcoups, Inc.* is misplaced. Again, the arbitration agreement there was set forth on page 25 of a 30 page contract, and the Ninth Circuit readily acknowledged that any procedural unconscionability was "minimal." *Nagrampa v. Mailcoups, Inc.* (9th Cir. 2006) 469 F.3d 1257, 1284. Further, the elements of substantive unconscionability at issue there are simply not in play here. Unlike the arbitration provisions in *Nagrampa*, the Enrollment Agreement is completely mutual *i.e.* both Ex'pression and Plaintiff must submit "any dispute" to binding arbitration. Further, Plaintiff can hardly complain about conducting the arbitration in Emeryville, California as his complaint expressly requests an intra-district transfer to the Oakland Division of this Court. (*See* Plaintiff's Complaint, at 2:8-10.)

1  In short, the arbitration agreement is a two-way street; both parties are required to arbitrate

2  "any dispute."  The arbitration clause is enforceable, and the Court should compel Plaintiff to

3  arbitrate his claims.

4  **C.    This Court, And Not A Jury, Must Issue An Arbitration Order**

5  Plaintiff's filing of a Demand For Trial By Jury as to any "disputed facts" underlying this

6  motion has no bearing on this Court's mandatory adjudication of this Motion.  Courts have

7  interpreted 9 U.S.C. § 4, (upon which Plaintiffs presumably rely in demanding a jury trial), to

8  require a jury trial "only if there is a triable issue <u>concerning the existence or scope of the</u>

9  <u>agreement</u>."  *Reilly v. WM Fin. Servs.* (9th Cir. 2004) 95 Fed. Appx. 851, 852.  To justify a jury trial

10  as to the arbitration, Plaintiff would have to produce specific facts  showing a triable issue of

11  material fact regarding the validity of the arbitration agreement.  *Id.*

12  In *Reilly,* the Court held that no such triable issues of fact were raised:

13  
14  > The Reillys have failed to produce specific facts showing a triable issue of
> material fact regarding the validity of the arbitration agreement. The Reillys
15  > submitted declarations stating that they had never seen, read, or approved the
> disputed page containing the actual arbitration clause. Assuming the truth of these
16  > declarations, no triable issue exists. Under California law, a party can be bound by
> an arbitration clause even if he failed to read or understand it. *Bolanos v.*
17  > *Khalatian,* 231 Cal. App. 3d 1586, 283 Cal. Rptr. 209, 211 (Cal. Ct. App. 1991);
> *Madden v. Kaiser Foundation Hospitals,* 17 Cal. 3d 699, 131 Cal. Rptr. 882, 889,
18  > 552 P.2d 1178 (Cal. Ct. App. 1976).

19  *Id.* at 852-853.  Plaintiff's argument is even less compelling that of the Reillys.  He admits he

20  received, signed and initialed the Enrollment Agreement in seven places.   Plaintiff admits that the

21  Enrollment Agreement contains an arbitration agreement and that the Federal Arbitration Act applies

22  to it.  (Opposition at 5:24-26.)  Indeed, section 6.1 of the Enrollment Agreement states: "All

23  determinations as to the scope, enforceability of this Arbitration Agreement shall be determined by

24  the Arbitrator, and not by a court.  The award rendered by the arbitrator may be entered in any court

25  

26  Additionally, any argument that the agreement is unconscionable because Plaintiff did not receive a copy of the AAA
rules is unavailing.  In *Lucas v. Gund, Inc.* (C.D. Cal. 2006) 450 F.Supp.2d 1125, the court held that, in the employment
27  context, not providing an employee with a copy of the rules would render the agreement unenforceable <u>only if those</u>
<u>rules were substantively unconscionable</u>. Id. at 1131.  That is not the case here.  *Lagatree, supra,* 74 Cal.App.4th at
28  1130.

having jurisdiction." Thus, in addition to other legal and factual points undermining Plaintiff's argument, Plaintiff as a matter of contract has agreed that it is for the arbitrator, not a jury, to determine and the scope and enforceability of the arbitration agreement. Plus, there is no dispute as to the existence, scope or validity of the Enrollment or Arbitration Agreement. Indeed, Plaintiff agrees that all other aspects of the Enrollment Agreement are valid and enforceable (Opposition, at p. 6, n. 5); Plaintiff cannot legitimately after-the-fact try to cherry-pick the arbitration agreement out of the contractual framework. Based on all of the foregoing, there is no triable issue for any jury to consider.

Through the Federal Arbitration Act, Congress sought "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Bushley v. Credit Suisse First Boston* (9th Cir. 2004) 360 F.3d 1149, 1153 (internal citations omitted).[7] Plaintiff's seeking of a jury demand on nonexistent issues of disputed fact undermines these established tenets.

### D. Dismissal Is Appropriate And Within This Court's Discretion.

Plaintiff admits that a stay of this case is required under the Federal Arbitration Act once this action is referred to arbitration. But Plaintiff does not address, and therefore, concedes that this Court has the inherent discretion to dismiss this case for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.* (9th Cir. 2004) 368 F.3d 1053, 1060 (district court did not err in dismissing plaintiffs' claims that were subject to arbitration pursuant to Fed. R. Civ. P. 12(b)(6)). Nor does Plaintiff put forth any reason why a stay should be imposed rather than dismissal. In light of Plaintiff's admission that the arbitration agreement is subject to the Federal Arbitration Act, dismissal here substantially serves judicial economy because once this case is referred to arbitration, there will be no further acts or decisions in this Court in this matter. Whichever party prevails in the arbitration can petition any court having jurisdiction to enter the award as a judgment. (*See* Enrollment Agreement, at p. 2.)

///

---

[7] To that end, the act generally "promote[s] appeals from orders barring arbitration and limit[s] appeals from orders directing arbitration." *Id.*; *see also* 9 U.S.C. § 16(b)(2) ("[A]n appeal may not be taken from an interlocutory order . . . directing arbitration to proceed.").

III.    **CONCLUSION**

For the foregoing reasons, the Court should compel Plaintiff to arbitrate his claims, and dismiss, or alternatively stay, this lawsuit accordingly.

Respectfully submitted,

Dated: August 25, 2008                     **DUANE MORRIS LLP**

By:    /s/ Eric Sinrod
       Eric J. Sinrod
       Michael J. Dickman
       Attorneys for Defendant
       Ex'pression Center For New Media