United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL DIGIACOMO,<br><br>    Plaintiff,<br><br>  v.<br><br>EX'PRESSION CENTER FOR NEW MEDIA INC., d/b/a EX'PRESSION COLLEGE FOR DIGITAL ARTS, and Does 1 through 100<br><br>    Defendant.<br>_____/ | No. C 08-01768 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Motion to Compel Arbitration and to Dismiss or Stay Action** |

       Plaintiff Samuel DiGiacomo filed a complaint in district court against defendant Expression Center for New Media., d/b/a Ex'pression College for Digital Arts ("the School"); and unnamed defendants Does 1-100, alleging violations of federal and state law relating to his expulsion from the School. Before the court is defendant's motion to compel arbitration and to dismiss, or alternatively stay, the present action. The court has considered the parties' arguments, and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

       Plaintiff DiGiacomo is an adult who enrolled in a course of study at the School, a private post-secondary vocational school located in Emeryville, California specializing in digital sound and visual arts. Joint Case Management Statement 2:6–8. The School was informed at the time of plaintiff's enrollment in the School that plaintiff suffers from Asperger's Syndrome, a form of autism. Complaint ¶¶ 5 & 10. The School receives both state and federal funding and provides federal student aid to its students. Complaint ¶ 6. Plaintiff qualified for and received federal student

1  aid to partially finance his enrollment at the School. Complaint ¶ 10; See also Thompson Dec. ¶ 5.
2  Plaintiff also took out personal loans to finance his tuition and expenses. Complaint ¶10.
3       On September 18, 2006, as part of plaintiff's enrollment in the School, plaintiff executed an
4  Enrollment Agreement which contains an arbitration provision. Joint Case Management Statement
5  3:3–4. The provision reads as follows:

> 6. ARBITRATION AGREEMENT
>
>     6.1    Any dispute arising from enrollment at Ex'pression College for Digital Arts, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") at Emeryville, California, under its Commercial Rules. All determinations as to scope, enforceability of this Arbitration Agreement shall be determined by the Arbitrator, and not by a court. The award rendered by the arbitrator may be entered in any court having jurisdiction.

Thompson Dec., Exh. A at 2, ¶¶ 6, 6.1; see also J. DiGiacomo Dec., Exh. B at 2, ¶¶ 6, 6.1; Samuel Dec., Exh. B at 2, ¶¶ 6, 6.1. Plaintiff initialed the paragraph in a designated space directly below the arbitration clause, next to language stating "I have read and understood this Arbitration Agreement." Id. Plaintiff signed and dated the Enrollment Agreement at the end of the second and final page. Id. The paragraph above the final signature reads as follows: "My signature below certifies that I have read, understood, and agreed to my rights and responsibilities, and that the institution's cancellation and refund policies and arbitration clause have been clearly explained to me. I have received a copy of this agreement." Thompson Dec., Exh. A at 2; see also J. DiGiacomo Dec., Exh. B at 2; Samuel Dec., Exh. B at 2.

     Thereafter, Plaintiff was enrolled in a course of study at the School from approximately September 2006 to April 2007 when Plaintiff's enrollment was terminated by the School. Joint Case Management Statement 2:9–11. The School did not provide plaintiff with a hearing or an opportunity to contest the reasons for his expulsion. Complaint ¶ 17. Prior to his expulsion, plaintiff had successfully completed three semesters of study at the School. Complaint ¶ 12. Plaintiff contends that the School unlawfully terminated his educational program. Joint Case Management Statement 4:15–16.

     On April 2, 2008, Plaintiff filed the instant complaint bringing six different causes of action based on violations of the Rehabilitation Act of 1973 under 29 U.S.C. section 701 et seq.,

2

discrimination in state funded programs under California Government Code sections 11135 and 11139, violation of the Unruh Civil Rights Act under California Civil Code section 51, violations of the California Unfair Competition Law under California Business of Professions Code section 17200, violations of a common law right to fair procedure under California law, and seeking declaratory relief under 28 U.S.C. section 2201 and California Code of Civil Procedure section 1060. The School as defendant subsequently filed a motion to compel arbitration and to dismiss, or alternatively stay, the present action. The parties submitted declarations in opposition to, and in support of, the motion, which is now before the court.

LEGAL STANDARD

Arbitrability

  Arbitration is a matter of contract and the court cannot require a party to arbitrate a dispute unless the party has agreed to do so. See EEOC v. Waffle House, Inc., 534 U.S. 279, 293 (2002). The question of whether parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability," is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986). The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, requires federal courts to enforce arbitration agreements and to stay any litigation that contravenes such agreements. Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the finding is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. Id.

DISCUSSION

  The present dispute concerns both the validity and the applicability of the arbitration clause contained in the Enrollment Agreement. Plaintiff argues that the arbitration provision is invalid due

3

1  to procedural and substantive unconscionability. Plaintiff also argues that the causes of action
2  alleged in the complaint are outside the scope of the arbitration provision. Plaintiff submits the
3  issues of whether the arbitration provision is unconscionable and whether that provision compels the
4  arbitration of the asserted causes of action as issues for the court to decide. The court will consider
5  the validity of the arbitration clause and the arbitrability of the instant action in turn.

6  I.     Arbitration Provision

7       Defendant asserts and plaintiff does not dispute that both parties signed the Enrollment
8  Agreement, that the Enrollment Agreement contains an arbitration provision and that the FAA
9  applies to that provision. The court agrees that because the Enrollment Agreement is a contract
10 evidencing a transaction involving commerce, and because the arbitration provision expressly
11 invokes the FAA, that provision is subject to the FAA. 9 U.S.C. § 2. The FAA provides that
12 written agreements to arbitrate controversies must be enforced, absent a ground for revocation of the
13 contractual agreement. Id.; See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By
14 its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead
15 mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an
16 arbitration agreement has been signed.") Defendant points to the FAA's mandate to argue that the
17 court must order the arbitration be conducted, once it is satisfied that the formation of the arbitration
18 provision or the failure to comply therewith are not at issue. The court agrees that an arbitration
19 provision must be enforced, according to its terms, absent a ground to invalidate the arbitration
20 provision. The court proceeds with an analysis of unconscionability as a defense to enforcement of
21 the arbitration provision included in the Enrollment Agreement.

22 II.    Validity of Arbitration Provision

23      A.    Applicable State Law

24      Plaintiff argues that the arbitration provision is invalid because it is unconscionable. When
25 the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration
26 provision itself, then the federal courts must decide whether the arbitration provision is invalid and
27 unenforceable under section 2 of the FAA. Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th
28 Cir. 2006) (*en banc*). The Supreme Court has held that while agreements to arbitrate are valid,

4

1  irrevocable and enforceable as a matter of federal law, state law nonetheless governs issues
2  concerning the validity, revocability, and enforceability of contracts generally. Perry v. Thomas,
3  482 U.S. 483, 492 n.9 (1987). As such, the generally applicable contract defense of
4  unconscionability may be asserted to invalidate arbitration agreements without contravening the
5  FAA. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). Here, although plaintiff
6  specifically and exclusively challenges the validity of the arbitration provision, he argues that the
7  provision is procedurally unconscionable under California law based, in part, on its inclusion in a
8  contract of adhesion. Because unconscionability is a generally applicable contract defense to be
9  decided under state contract law, the court is required to consider the circumstances surrounding the
10 formation of the entire agreement in the course of analyzing the validity of the arbitration provision.

12 Under California law, an arbitration agreement must be both procedurally and substantively
13 unconscionable to be invalid. Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal.4th
14 83, 114 (2000); see also Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101, 1105 (9th Cir. 2003). A
15 sliding scale is used to assess procedural unconscionability in proportion to substantive
16 unconscionability: "The more substantively oppressive the contract term, the less evidence of
17 procedural unconscionability is required to come to the conclusion that the term is unenforceable,
18 and vice versa." Armendariz, 24 Cal.4th at 114.

19     B.    Procedural Unconscionability

20 The court examines two factors when examining the procedural unconscionability of a
21 contract: oppression and surprise. Id.. "Oppression arises from an inequality of bargaining power
22 that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves
23 the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by
24 the party seeking to enforce them." Flores v. Transamerica HomeFirst, Inc., 93 Cal.App.4th 846, 853
25 (2001). Here, plaintiff presents two bases for finding that the arbitration agreement is procedurally
26 unconscionable: the Enrollment Agreement was a contract of adhesion and plaintiff was not properly
27 made aware of the arbitration terms imposed upon him at the time he was called upon to sign the
28 Enrollment Agreement.

5

An argument that an arbitration provision is procedurally unconscionable may be informed, as required by California state substantive law, by a determination of whether it is contained within a larger contract of adhesion. Nagrampa, 469 F.3d at 1276. Such a determination is within the province of this court. The Supreme Court has established that while challenges to the validity of the contract as a whole must be considered by the arbitrator in the first instance, challenges to the arbitration clause itself must be decided by the court and those latter challenges may raise issues concerning the formation of the agreement to arbitrate. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006); see also Bruni v. Didion, 160 Cal.App.4th 1272, 1283–88 (2008) (noting that the separate enforceability of arbitration provisions from the rest of the contract does not preclude a court from assessing whether the parties ever formed a valid agreement to arbitrate).

A contract of adhesion is one where a standardized contract has been drafted by the party with stronger bargaining power, and the weaker party has no choice other than to take it or leave it. Neal v. State Farm Ins. Cos., 188 Cal.App.2d 690, 694 (1961). Plaintiff argues that the arbitration provision was unconscionable because it was contained within an adhesion contract—a standardized form, drafted by the party of superior bargaining power and presented to plaintiff without any opportunity for negotiation. These facts alone fail to render the arbitration provision unenforceable. The court notes that adhesion contracts are "a familiar part of the modern legal landscape . . . They are also an inevitable fact of life for all citizens-businessman and consumer alike." Graham v. Scissor-Tail, Inc., 28 Cal.3d 807, 817-818 (1981). Because of the inevitability that one contracting party almost always has superior bargaining position, other factors need to be present to render an adhesion contract unenforceable. Case law dictates that considerations of procedural unconscionability may inform the determination, e.g., an adhesion contract or provision that is not consistent with the reasonable expectations of the weaker party will not be enforced against him. A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 486–87 (1982); Fischer v. First Internat. Bank, 109 Cal.App.4th 1433, 1446 (2003) ("[a]lthough contracts of adhesion are generally enforceable according to their terms, a provision contained in such a contract cannot be enforced if it does not fall within the reasonable expectations of the weaker or 'adhering' party.").

6

The Enrollment Agreement was signed by both parties, and plaintiff's actions demonstrate an implied acceptance and reasonable expectation of arbitration. Plaintiff not only signed the two-page Enrollment Agreement, but he also initialed several separate clauses therein, including the arbitration provision. That plaintiff now states the arbitration provision was obscured by the presence and effect of an introductory paragraph on dispute resolution is not reasonable. Plaintiff does not go so far as to assert that he lacks the mental capacity to contract.[1] However, Plaintiff's lesser assertions that he was a person with mental disabilities who was confused by the dispute resolution procedures and the potential remedies available to him under the express terms of the Enrollment Agreement are unavailing. The fact that a contract term is not read or understood by the adhering party will not authorize a court to refuse to enforce the contract. A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 486 (1982). Plaintiff is an adult and should have taken the time he needed to read and consider the arbitration provision. There is no evidence to indicate that plaintiff was rushed or pressured during the approximately two hour enrollment process. There is also no evidence to indicate that the arbitration provision was either buried or hidden within the two-page document or obfuscated by other language therein. Indeed, plaintiff initialed the separate line below the arbitration provision as an acknowledgment that he had read and understood the clause. The arbitration provision is not rendered invalid by procedural unconscionability.

C.   Substantive Unconscionability

A determination of substantive unconscionability turns on the existence of overly-harsh or one-sided results. Nagrampa, 469 F.3d at 1280. Under California law, the paramount consideration in assessing conscionability of an arbitration provision is mutuality. Id. at 1281. When only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite "modicum of bilaterality." Armendariz, 24 Cal.4th at 119-120.

Plaintiff contends that the arbitration provision is overly-harsh and one-sided because it requires arbitration to be conducted by the American Arbitration Association ("AAA") under its Commercial Rules and such would require plaintiff to pay substantial case management fees, some of the arbitrator's fees and larger filing fees than he would have to pay in court.[2] Defendant argues

7

that (a) the arbitration provision is not one-sided because it applies and binds both parties equally; and (b) the AAA fee structure is not unconscionable as applied to plaintiff who has provided no evidence that he cannot afford the arbitration costs and fees and who expressly agreed to be bound by the AAA's rules as invoked in the Enrollment Agreement.

To begin, the court holds that the Enrollment Agreement applies and binds both parties equally, thereby satisfying the requisite modicum of bilaterality. With regard to the overly-harsh allegation, the court turns to the consideration of whether the fact that the arbitration provision is governed by the Commercial Rules of the AAA requires plaintiff to pay unreasonable costs or arbitration that will effectively prevent him from vindicating his rights. The California Supreme Court has noted that cost issues should be resolved not at the judicial review stage but when a court is petitioned to compel arbitration. See Armendariz, 24 Cal.4th at 110 (stating that the imposition of substantial forum fees is contrary to public policy, and is therefore grounds for invalidating or revoking an arbitration agreement and denying a petition to compel arbitration).

Just as the parties' may limit by contract the issues which they will arbitrate, so too may the parties' specify by contract the rules under which that arbitration will be conducted. Cable Connection, Inc. v. DIRECTV, Inc., __ Cal.Rptr.3d __, 2008 WL 3891556, 9 (2008). The Supreme Court has repeatedly held that the express terms of an arbitration agreement are controlling over considerations of expediency in the dispute resolution process. Id. (citations omitted). As such, the court gives proper credence to the contractual rights and intentions of the parties by enforcing the arbitration provision according to its terms.

The fee structure under the Commercial Rules of the AAA has been held not to be unconscionable by other courts, in part because they provide for the waiver of fees in circumstances of need. Lagatree v. Luce, Forward, Hamilton & Scripps, 74 Cal.App.4th 1105, 1130 (1999). Plaintiff notes, but pays little attention to, the AAA's flexible approach with regard to the waiver of payment options for the resolution of claims. Plaintiff's contention at oral argument that Lagatree stands for the premise that the special rules cited therein served to correct the unfairness of the AAA rules is incorrect. Lagatree specifically held there was no unfairness with regard to the AAA administrative fees and that the special rules were adopted to govern employment disputes. 74

8

1 Cal.App.4th at 1127 n.18, 1130 n.21. Moreover, as defendant readily acknowledges, the
2 Commercial Rules of the AAA embrace the use of the Supplementary Procedures for Consumer-
3 Related Disputes, which provide for an arbitrator's fees to be reduced or waived in cases of financial
4 hardship. See Clarke Dec., Exh. A at 25–26. Accordingly, the terms of the arbitration provision do
5 not require plaintiff to bear any type of overly-harsh expense or unconscionable cost that he would
6 not be required to incur in litigation. The court finds that arbitration under the instant provision
7 constitutes a reasonable and conscionable substitute for a judicial forum. Having determined that
8 the arbitration provision is valid and enforceable, the court proceeds to an analysis of whether the
9 parties' dispute is referable to arbitration under the terms of that provision. 9 U.S.C. § 3.

10 III.    Question of Arbitrability
11         A.     Judicial Determination
12         Whether the claims asserted in a lawsuit come within the scope of an arbitration provision is
13 an issue for judicial determination. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).
14 A disagreement between the parties about whether an arbitration clause in a concededly binding
15 contract applies to a particular controversy is a "gateway issue" for the court to decide. Id. Such is
16 the case because "arbitrators derive their authority to resolve disputes only because the parties have
17 agreed in advance to submit such grievances to arbitration." AT & T Technologies, Inc. v.
18 Communications Workers of America, 475 U.S. 643, 648-649 (1986) (citing Gateway Coal Co. v.
19 Mine Workers, 414 U.S. 368, 374 (1974)). Only when the parties "clearly and unmistakably provide
20 otherwise" would a question of arbitrability become an extrajudicial matter, i.e., to be resolved by an
21 arbitrator. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (directing courts not
22 to assume that the parties agreed to arbitrate without clear and unmistakable evidence). The court
23 fails to find clear and unmistakable intent that the parties agreed an arbitrator should decide
24 arbitrability here.
25         The instant arbitration clause provides that: "All determinations as to scope, enforceability of
26 this Arbitration Agreement shall be determined by the Arbitrator, and not by a court." Thompson
27 Dec., Exh. A at 2, ¶¶ 6, 6.1; see also J. DiGiacomo Dec., Exh. B at 2, ¶¶ 6, 6.1; Samuel Dec., Exh. B
28 at 2, ¶¶ 6, 6.1. Defendant contends that such language precludes a jury from considering the scope

9

1  and enforceability of the arbitration agreement.  However, such language does not preclude the court
2  from considering whether the making of the agreement for arbitration or the failure to comply
3  therewith is in issue prior to ordering arbitration to proceed.  See Nagrampa, 469 F.3d at 1269.  Nor
4  does such language absolve the court of its duty to rule on the bounds of the arbitration provision
5  itself, i.e., to determine whether the dispute in question falls within the scope of the arbitration
6  provision.  See supra, Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 at 443–445; Bruni v.
7  Didion, 160 Cal.App.4th 1272 at 1284.  Accordingly, it is for the court, not the arbitrator, to decide
8  in the first instance whether the present dispute is to be resolved through arbitration.

IV.     Scope of Coverage

The  FAA does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements.  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).  Where a contract contains an arbitration agreement, there is a presumption of arbitrability in that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–83 (1960).  Doubts should be resolved in favor of coverage.  Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) ("The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

A.      Conflicting Language

The presumption favoring arbitration is particularly applicable where the arbitration provision is as broad as the one employed in the Enrollment Agreement, which provides for arbitration of "Any dispute arising from enrollment at Ex'pression College for Digital Arts, no matter how described, pleaded or styled. . . ."  Thompson Dec., Exh. A at 2, ¶¶ 6, 6.1; see also J. DiGiacomo Dec., Exh. B at 2, ¶¶ 6, 6.1; Samuel Dec., Exh. B at 2, ¶¶ 6, 6.1.  Plaintiff argues that the provision conflicts with other language in the Enrollment Agreement concerning a general dispute resolution procedure which states that "any questions or problems concerning this school which have not been satisfactorily answered or resolved by the school should be directed to the Bureau of

1  Private Postsecondary and Vocation Education. . . " Id. at 1.  Plaintiff asserts that this introductory
2  language referring to "*any* questions or problems" is more broadly applicable than the arbitration
3  provision which refers to "disputes arising from *enrollment*."  Plaintiff contends that the general
4  applicability of the dispute resolution language forecloses any clear and unmistakable agreement to
5  arbitrate the instant causes of action arising from plaintiff's expulsion and not enrollment.  Plaintiff
6  points to a recent holding that an arbitration provision should not be considered in isolation, but
7  should be interpreted in context and part of the contract as a whole, to support his contention that his
8  claims do not fall within the scope of the arbitration provision.  Thompson v. Toll Dublin, LLC, 81
9  Cal.Rptr.3d 736, 743 (2008).

10        The court disagrees with plaintiff's logic.  The fact that the instant action arises from
11  plaintiff's expulsion from the School fails as a matter of California contract law to place plaintiff's
12  claims beyond the reach of arbitration.  The court agrees with defendant that the overall context of
13  the term "enrollment" in the Enrollment Agreement makes clear that, as used in the arbitration
14  provision, it was intended to encompass the entire period plaintiff attended the School.  See e.g.,
15  Thompson Dec., Exh. A at 1, ¶¶ 4.3 & 4.5, at 2, ¶¶ 7.2 & 9.1; see also J. DiGiacomo Dec., Exh. B at
16  1, ¶¶ 4.3 & 4.5, at 2, ¶¶ 7.2 & 9.1; Samuel Dec., Exh. B at 1, ¶¶ 4.3 & 4.5, at 2, ¶¶ 7.2 & 9.1.
17  Moreover, case law supports a broad construction of the arbitration provision on its face and by its
18  terms "any dispute arising from" and "no matter how described, pleaded or styled."  Davis v.
19  Farmers Ins. Group, 134 Cal.App.4th 100, 107 (2005).  The Supreme Court's instruction that the
20  allegations in a complaint "need only touch matters" covered by the arbitration provision further
21  bolsters the breadth of the arbitration provision.  Mitsubishi Motors Corp. v. Soler
22  Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.13 (1985).  The court finds no evidence in the
23  arbitration provision or elsewhere in the Enrollment Agreement of a purpose to exclude the instant
24  claims from arbitration.

25        B.     Plaintiff's Federal and State Statutory Claims

26        It is well settled that statutory claims may be the subject of an arbitration agreement,
27  enforceable pursuant to the FAA.  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).
28  As with any other contract, the parties' intentions control the arbitrability of statutory claims and

those intentions are generously construed as to issues of arbitrability. Broughton v. Cigna Healthplans of California, 21 Cal.4th 1066, 1074–75 (1999). Although not all statutory claims are necessarily appropriate for arbitration, by agreeing to arbitrate, the party should be held to it "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627 (1985). The party opposing arbitration bears the burden to show that Congress intended to preclude a waiver of a judicial forum for the statutory claims asserted in the instant causes of action. In this regard, plaintiff points to nothing in the text or the legislative history of any of the statutes asserted in the instant causes of action that explicitly precludes arbitration. Indeed, plaintiff has put forth no evidence to suggest that mandatory arbitration is prohibited under any state or federal statute governing his claims. The court finds plaintiff's arguments insufficient to preclude the arbitration of statutory rights.

   The Supreme Court has ruled that statutory claims are appropriate for arbitration "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, [because] the statute will continue to serve both its remedial and deterrent function." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985). Specifically, the California Supreme Court has held that state and federal anti-discrimination claims are arbitrable if the arbitration forum meets certain minimum requirements, including neutrality of the arbitrator, bilaterality and limitations on the costs of arbitration. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83 (2000). The court also noted "[t]here is no reason to suppose that mandatory arbitration agreements of civil rights claims [are] inappropriate, provided that arbitration gives claimants the full opportunity to pursue such claims." Id. at 96. So too has the California Supreme Court held claims alleging violations of the California Unfair Competition Law under California Business of Professions Code section 17200 subject to arbitration, notwithstanding the fact that such claims vindicate important statutory rights. Cruz v. PacifiCare Health Systems, Inc., 30 Cal.4th 303, 317 (2003). Finally, the court notes that arbitrators have the power to grant all legal and equitable remedies, including declaratory and injunctive relief. See e.g., Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003); Broughton v. Cigna Healthplans of California, 21 Cal.4th

1066 (1999). In sum, there is no evidence to suggest that the Enrollment Agreement required plaintiff to waive any of his statutory rights in such a manner that would be contrary to public policy and unlawful. The arbitration provision by its terms provides for an adequate forum for plaintiff to secure his statutory and common law rights.

CONCLUSION

Because the parties have a valid and enforceable agreement to arbitrate, and because the arbitration provision applies to the present dispute, defendant's motion to compel and dismiss, or alternatively stay is **GRANTED** as to the motion to compel and stay the instant action.

IT IS SO ORDERED.

Dated: September 15, 2008



MARILYN HALL PATEL
United States District Court Judge
Northern District of California

13

**ENDNOTES**

1. If he did, such a lack-of-capacity defense to enforcement of the contract as a whole might well be an issue for the arbitrator. See e.g., Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471-472 (5th Cir. 2002).

2. Plaintiff contends that under the AAA's Commercial Rules, a party is obliged to pay part of the arbitrators' fees, a filing fee that ranges from $750 to over $8,000 depending on the size of the claim, a sliding case service fee, and that the arbitrator has discretion to apportion all fees, expenses and compensation as the arbitrator deems appropriate. See Clarke Dec, ¶ 2, Exh. A at 19.